IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DERRICK A. DAVIS,              *
                               *
     Plaintiff,                *    CIVIL ACTION NO. 14-00582-B
                               *
vs.                            *
                               *
CAROLYN W. COLVIN,             *
Commissioner of Social         *
Security,                      *
                               *
     Defendant.                *

## ORDER

Plaintiff Derrick A. Davis (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.*  On October 15, 2015, the parties consented to have the undersigned conduct any and all proceedings in this case.  (Doc. 15).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.  **Procedural History**

Plaintiff protectively filed his applications for benefits on October 12, 2011.  (Tr. 162).  Plaintiff alleged that he has been disabled since September 1, 2009, due to degenerative disc disease, lumbar radiculopathy, hypertension, flat feet, depression, cholesterol, and post traumatic stress disorder ("PTSD").  (Id. at 162, 168).

Plaintiff's applications were denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Katie H. Pierce (hereinafter "ALJ") on April 24, 2013.  (Id. at 44).  Plaintiff attended the hearing with his counsel and provided testimony related to his claims. (Id. at 47).  A vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id. at 58).  On May 21, 2013, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 37).  The Appeals Council denied Plaintiff's request for review on November 7, 2014.  (Id. at 1-2).  Therefore, the ALJ's decision dated May 21, 2013, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  The parties waived oral argument on October 15, 2015 (Doc. 14), and agree that this case is now ripe for judicial review and is properly

before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

> **1. Whether the ALJ erred in rejecting the opinions and findings of Plaintiff's examining psychologist, Dr. Joseph G. Law, Jr.?**

## III. Factual Background

Plaintiff was born on March 28, 1984, and was twenty-nine years of age at the time of his administrative hearing on April 24, 2013.  (Tr. 42, 162).  Plaintiff testified that he graduated from high school and attended college.  (Id. at 47-48).  He also served in the military from 2002 to 2009.[1]  (Id. at 48).  In 2010, following his military service, Plaintiff worked as a barber in a barber shop.  (Id.).  He also worked in 2009 as a ship fitter helper.  (Id. at 49, 205).

At his hearing, Plaintiff testified that the "primary problems" that interfere with him working now are PTSD, back pain, and the side effects of his medication (drowsiness).  (Id. at 49-50).  According to Plaintiff, at the time of his hearing, he had been receiving mental health treatment for his PTSD through the VA and had been seeing a therapist about once a week for about a year and a half.  (Id. at 49).  With respect to his

---

[1] In the military, Plaintiff served as a fuels propulsions mate, refueling aircraft and boats.  (Tr. 48).

back pain, Plaintiff testified that the pain in his lower back was a seven or eight on a ten-point pain scale, after taking his medication. (Id. at 55). Plaintiff testified that his treatment has consisted of a cortisone injection in his back and medications, including Lortab (for pain) and Baclofen (a muscle relaxer).[2] (Id. at 53-54, 57-58).

Plaintiff testified that he lives with his wife, three children (ages eight, five, and two), and his sister. (Id. at 51). He does not help with the children or the house work. (Id.). His routine consists of getting up in the morning after not sleeping well, brushing his teeth, taking a shower, and staying in his room. (Id.). Plaintiff testified that he can lift approximately five pounds regularly. (Id. at 52). He cannot bend. (Id.). He can stand for about fifteen minutes and can only walk about fifteen feet before needing to stop. (Id. at 53-54). He uses a cane issued by the Veterans Administration, and he has a wheelchair and a walker as well. (Id. at 53, 190).

In his Function Report, Plaintiff stated that he needs help

---

[2] Plaintiff's medication list submitted to the Agency also included aspirin, Ketorolac Tromethamine (pain), Lidocaine patch (pain), Lisinopril (high blood pressure), Lovastatin (cholesterol), Meloxicam (pain), Methocarbamol (muscle relaxer), Methylprednisolone (anti-inflammatory), Omeprazole (reflux), Prazosin (nightmares), Sertraline (depression), and Trazodone (insomnia). (Tr. 171).

with his personal needs such as dressing, bathing, grooming, and using the toilet. (Id. at 185). In addition, he does not drive and cannot go out alone because he needs assistance getting in and out of the car. (Id. at 187). He can count change but does not shop and cannot handle a bank account or pay bills. (Id.). In addition, Plaintiff reported that he has a short attention span, lacks focus, is forgetful, and has mood swings. (Id. at 187-88). He no longer enjoys hobbies or interests but occasionally socializes with family. (Id. at 188). He has problems getting along with others because of anger and irritability. (Id. at 189). However, he can interact with authority figures "when need be" and has never been fired from a job because of problems getting along with other people. (Id. at 190). Plaintiff does not handle stress well, but he is able to follow written and spoken instructions "within limits of activity involved." (Id. at 189-90).

## IV.  Analysis

### A.  Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct

legal standards were applied.[3]  Martin v. Sullivan, 894 F.2d
1520, 1529 (11th Cir. 1990).  A court may not decide the facts
anew, reweigh the evidence, or substitute its judgment for that
of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th
Cir. 1986).  The Commissioner's findings of fact must be
affirmed if they are based upon substantial evidence.  Brown v.
Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v.
Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding
substantial evidence is defined as "more than a scintilla, but
less than a preponderance" and consists of "such relevant
evidence as a reasonable person would accept as adequate to
support a conclusion.").  In determining whether substantial
evidence exists, a court must view the record as a whole, taking
into account evidence favorable, as well as unfavorable, to the
Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131
(11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4
(S.D. Ala. June 14, 1999).

   **B.**   **Discussion**

   An individual who applies for Social Security disability
benefits must prove his or her disability.  20 C.F.R. §§
404.1512, 416.912.  Disability is defined as the "inability to
engage in any substantial gainful activity by reason of any

---

[3] This Court's review of the Commissioner's application of legal
principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th
Cir. 1987).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[4] 20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff

---

[4] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

has not engaged in substantial gainful activity since May 2010,[5] and that he has the severe impairments of degenerative disc disease of the lumbar spine, lumbar radiculopathy, lumbar stenosis, posttraumatic stress disorder ("PTSD"), major depressive disorder, and insomnia. (Tr. 24). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 25).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a range of light work, except that Plaintiff "can sit for 6 hours in an 8-hour workday and stand or walk for 6 hours in an 8-hour workday. The claimant can lift and carry 10 pounds frequently, 20 pounds occasionally. The claimant can occasionally stoop, kneel, crouch, crawl, balance, and climb ramps and stairs. The claimant can occasionally push and pull leg controls. The claimant cannot climb ropes, ladders, or scaffolds. The claimant cannot operate automotive equipment or work around dangerous machinery. The claimant can understand, remember, and

_____

[5] The ALJ found that Plaintiff had engaged in substantial gainful activity working as a barber from December 2009 through May 2010, after his alleged onset date of September 1, 2009. (Tr. 23). However, Plaintiff had not engaged in substantial gainful activity since May 2010, when he stopped working as a barber. (Id.).

carry out simple, routine, repetitive tasks.  The claimant can understand to carry out detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations.  The claimant cannot tolerate contact with the public.  The claimant needs to work independently but can work in close proximity to coworkers and supervisors.  The claimant can maintain concentration and attention for up to 2 hours at a time.  The claimant can occasionally adapt to changes in the work setting.  The claimant can tolerate supervision, criticism, or instructions when given in a positive, nonthreatening manner.  The claimant can perform goal oriented work but not production pace work." (Id. at 26).  The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the alleged symptoms were only partially credible for the reasons explained in the decision.  (Id. at 27).

Given Plaintiff's RFC, the ALJ found that Plaintiff is not capable of performing his past work as a ship fitter and aircraft technician.  (Id. at 35).  However, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of light work, as well as his age, education and work experience, there

are other jobs existing in the national economy that Plaintiff is able to perform, such as "garment folder," "housekeeper/cleaner," and "garment bagger," all of which are classified as light and unskilled. (Id. at 36). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 36-37 ).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

### 1.   **Issues**

### A. **Whether the ALJ erred in rejecting the opinions and findings of Plaintiff's examining psychologist, Dr. Joseph G. Law, Jr.?**

In this case, Plaintiff argues that the ALJ erred in rejecting the opinions and findings of his examining psychologist, Dr. Joseph G. Law, Jr., contained in a mental status evaluation performed on April 17, 2013. Specifically, Plaintiff claims that the ALJ erred in assigning "little weight" to Dr. Law's opinions that Plaintiff is unable to maintain gainful employment as a result of marked limitations in social and occupational functioning and in assigning "great weight" to the opinions of consulting psychologist, Dr. Jennifer L. Adams, Ph.D., that Plaintiff's PTSD and depression cause only moderate symptoms and that he is able to understand and carry out instructions. (Doc. 9 at 2; Tr. 32, 34, 447, 610). The Commissioner counters that the ALJ properly weighed all of the

medical opinions in this case and that Dr. Law's opinions are inconsistent with the substantial evidence in the case and, thus, were properly discredited. (Doc. 12 at 7). Defendant further argues that the opinions of Dr. Adams are consistent with the substantial evidence in the case and, thus, were properly afforded great weight. (Id.). Having carefully reviewed the record in this case, the Court agrees that Plaintiff's claim is without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). The opinion of "a

one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the

evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In the present case, the record shows that at the request of Plaintiff's attorney, Dr. Law conducted a mental status examination of Plaintiff on April 17, 2013, and administered several tests, including the Post Traumatic Checklist, the Beck Depression Inventory, and the Rey 16 Item Memory Test.[6] (Tr. 605). Upon examination, Dr. Law found that Plaintiff was alert and oriented to time, place, and person; his speech was understandable and coherent; his behavior was appropriate to the situation; he denied hallucinations and delusions; his long term memory was in tact; when asked to follow simple, three-step instructions, he complied and could remember all three steps; and his test results did not indicate malingering. (Id. at 606). In addition, Dr. Law noted that Plaintiff's mood was depressed; he readily admitted to feelings of anxiety, disappointment, confusion, anger, fear, frustration, tension, and depression; and he reported having difficulty sleeping and

---

[6] The ALJ initially questioned Dr. Law's credentials but ultimately treated Dr. Law as an acceptable medical source. (Tr. 34-35).

horrible nightmares.  (Id.).  Dr. Law diagnosed Plaintiff with Post Traumatic Stress Disorder (chronic due to military combat) and Major Depressive Disorder (without psychosis, secondary to chronic PTSD and pain).  (Id. at 609).  Dr. Law assigned Plaintiff a GAF score of 45[7] and opined that Plaintiff's "ability to stay on task and to adapt to work settings is impaired by chronic pain as well as his PTSD/major depression with marked impairment."  (Id. at 610).  Dr. Law opined that Plaintiff "is not adapting well and suffers from depression secondary to both pain and chronic PTSD.  His PTSD symptoms have worsened since onset in September 2009 and are debilitating.  . . . [H]e is not able to maintain gainful employment and has a total loss of access to the competitive labor market."  (Id.).  Dr. Law also completed a Mental RFC Questionnaire, finding that Plaintiff has

---

[7] A GAF score of 45 indicates serious symptoms.  GAF (Global Assessment of Functioning) is a numeric scale (0 through 100) used by mental health clinicians that measures a patient's overall level of psychological, social, and occupational functioning on a hypothetical continuum.  A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious social dysfunction (e.g., no friends, unable to keep a job).  A GAF score of 51-60 suggests moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  A GAF score of 61-70 is indicative of mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.  See http://www.gafscore .com.

frequent deficiencies in concentration, persistence, or pace, repeated expected episodes of decompensation, and marked limitations in social functioning, understanding, carrying out, and remembering instructions, responding appropriately to supervision, co-workers, and work pressures, performing repetitive tasks, and completing work related activities. (Id. at 611-12).

As the ALJ found, Dr. Law's opinions related to Plaintiff's mental impairments, including that Plaintiff has marked limitations in understanding, carrying out, and remembering instructions, that he cannot concentrate or stay on task, and that his PTSD symptoms are debilitating, are undermined by his own findings that Plaintiff was alert and oriented, that his speech was understandable and coherent, that his long term memory was completely in tact, that he could read and follow a command in a sentence, that he could remember three words and repeat them back to the examiner, and that when asked to follow simple, multi-step instructions, he complied and could remember all of the steps. (Id. at 606).

In addition, Dr. Law's opinions related to Plaintiff's physical impairments, *i.e.*, Plaintiff's impairment from chronic pain which contributes significantly to his depression and his inability to stay on task and to adapt to work settings, are not based on any physical findings and are inconsistent with his Dr.

Law's own acknowledgement that Plaintiff's treatment records showed only lumbar sprain and degenerative disk disease at L4-L5 causing "mild" stenosis. (Id. at 607, 610). Dr. Law's opinions regarding the severity of Plaintiff's chronic pain are also inconsistent with the remaining substantial evidence in the case. For example, Dr. Law references the MRI taken in June 2011 which showed degenerative disk disease at L4-5 causing only "*mild*" central canal stenosis and bilateral neuroforaminal stenosis. (Id. at 239, 571) (emphasis added). In addition, x-rays of Plaintiff's lumbar spine taken in November 2011 show "normal position and alignment," "no disc space narrowing," "no spondylolysis," and "normal lumbar spine." (Id. at 228). Also, a physician's assistant at the VA who evaluated Plaintiff's complaints of back pain further opined that Plaintiff had "lumbar strain, resolved" with no radiculopathy and "no functional limitation;" "DDD L4-5 lumbar spine" with no radiculopathy and only "mild functional limitation." (Id. at 240-41). The ALJ correctly noted that neither Plaintiff's treating physicians at the VA nor his non-VA treating orthopedist had imposed any functional limitations related to Plaintiff's back. (Id. at 34, 594). To the contrary, Plaintiff's recommended treatment consisted of physical therapy, injections, and medications. (Id. at 553, 566, 573, 580, 594).

Likewise, Dr. Law's opinions related to Plaintiff's mental

impairments are inconsistent with the remaining substantial evidence in this case. The record shows that at the request of the Agency, Plaintiff was examined by psychological consultant, Dr. Jennifer L. Adams, Ph.D., on January 10, 2012. (Id. at 445). Dr. Adams observed that Plaintiff walked "with discomfort" and was using a walker, but, otherwise, he appeared "strong and in good health," and "his posture was erect." (Id.).

Dr. Adams noted that Plaintiff's speech was normal; his concentration and attention were normal; he was alert and oriented in all spheres; he was able to count backward from 20 by 2s; he was able to spell the word WORLD backward; he was able to solve a simple mathematical equation involving change-making; his memory was normal; he could recall four digits forward and three digits backward; he could recall three objects immediately and all three after five minutes; he could recall the events of the day of the evaluation and the preceding few days; he could recall remote events as well; his fund of information was normal; he could recall items in the news; he could name the current president and the preceding president; his abstraction was normal; he could interpret proverbs and do simple similarities; his thought processes were normal; there was no confusion; his thought content was normal; and his judgment and insight were adequate. (Id. at 445-46). Dr. Adams noted,

however, that Plaintiff's mood was dysphoric and somewhat irritable, and his affect was flat. (Id.).

Plaintiff reported to Dr. Adams that his activities are limited. According to Plaintiff, he largely spends the day in bed watching television, although he is able to take care of his activities of daily living with "some help" from his wife. (Id. at 446).

Dr. Adams diagnosed Plaintiff with PTSD and Major Depressive Disorder and assigned a GAF score of 55.[8] (Id. at 447). Dr. Adams opined that Plaintiff's prognosis is "fair" and that he "would be expected to respond to mental health services, if he is willing to engage with the therapist." (Id.). Dr. Adams summarized her evaluation as follows:

> [Plaintiff] is a 27 year-old veteran who was injured in the war in Iraq and Afghanistan. In addition to physical injuries he seems to have suffered PTSD. He also seems to have developed some depression, likely in reaction to the adjustments he is having to make in his lifestyle as a result of his physical injuries and PTSD. [Plaintiff's] intellectual functioning is likely in the Average range and he is able to manage any benefits he might obtain. His memory and concentration seem to be somewhat impaired, possibly from anxiety and depression or

---

[8] As previously noted, a GAF score of 55 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). See http://www.gafscore.com.

> medication. There is <u>not</u> a reference in the
> medical records to a head injury.
> [Plaintiff] is not functioning as well as he
> probably should be and likely will in the
> future with mental health treatment. He is
> able to understand and carry out
> instructions, but he is probably not able to
> remember instructions reliably at this time.
> [Plaintiff] is probably not able to respond
> appropriately to supervision, co-workers and
> work stresses at this time.

(<u>Id.</u> at 447) (emphasis in original).[9]

While both Dr. Law and Dr. Adams diagnosed Plaintiff with PTSD and Major Depressive Disorder, Dr. Law's opinion that Plaintiff's mental impairments have resulted in marked and debilitating limitations that preclude him from working is inconsistent with Dr. Adams' findings that Plaintiff's concentration, attention, memory, fund of information, thought processes, content, judgment, and insight are normal and adequate; that he is able to understand and carry out instructions (although he may not be able to remember instructions reliably); that his prognosis is fair; that his symptoms from his PTSD and depression are moderate; and that he would be expected to respond to mental health services. (<u>Id.</u> at 446-47).

---

[9] Dr. Adams does not describe the nature of Plaintiff's injuries while serving in the military, but, at his hearing, Plaintiff testified that he was working on a flight deck when a fuel hose got caught on the deck and snatched him off his feet. Plaintiff testified that he landed on his back and has been having problems "ever since then." (Tr. 50, 506).

As the ALJ found, Dr. Adams' opinions that Plaintiff's symptoms are moderate and that he is able to understand and carry out instructions are consistent with Plaintiff's VA treatment records, which reflect a conservative level of treatment for his mental health impairments and essentially normal mental status examinations with only moderate depression and anxiety. (Id. at 33-34). Indeed, the treatment notes of Patricia Schlottman, a social worker who began therapy with Plaintiff in 2012 for PTSD, repeatedly noted that Plaintiff was only "moderately" depressed,[10] that his eye contact, insight, and judgment were good, that his thought processes were clear, and that his memory was intact. (Id. at 481, 483, 489, 493-94, 503, 506, 508, 510, 514, 518-19, 522, 525, 531, 554, 734). In addition, Plaintiff's treatment records show that he has never required in-patient psychiatric treatment or emergency room treatment for any mental health issue. (Id.).

Although Plaintiff criticizes the ALJ for referencing Plaintiff's VA treatment records (including the fact that no

---

[10] Early in the evaluation process at the VA, Plaintiff was administered the Beck Depression Inventory II test, and he scored in the "severely depressed" range. (Tr. 526). Subsequent to that time and throughout his treatment at the VA, the staff repeatedly found him to be only "moderately" depressed. (Id. at 481, 483, 489, 493-94, 503, 506, 508, 510, 514, 518-19, 522, 525, 531, 554, 665, 672, 699, 708). On November 29, 2012, he was observed to be only "mildly" depressed. (Id. at 674).

treatment source at the VA has ever found that Plaintiff is disabled due to a mental impairment, nor has Plaintiff received a service connection disability for PTSD or depression), the fact remains that Plaintiff's treatment records at the VA are relevant and do reflect a level of treatment that is consistent with Dr. Adam's opinions detailed above and inconsistent with Dr. Law's opinions that Plaintiff's mental health impairment is debilitating.

Based on the foregoing, the Court finds that the ALJ assigned the appropriate weight to both Dr. Law's and Dr. Adams' opinions. In addition, the Court finds that the ALJ's RFC fully accommodates Plaintiff's PTSD and depression (specifically, Dr. Adams' findings that Plaintiff may not be able to reliably remember instructions or respond appropriately to supervision, co-workers, or work stresses)[11] by limiting Plaintiff to goal oriented work with only occasional changes in the work setting, carrying out uninvolved written or oral instructions with few concrete variables, and limiting his interaction with supervisors, co-workers, and the public.[12]   In addition, the

---

[11] Interestingly, as noted by the ALJ, Plaintiff reported no problems getting along with authority figures and denied ever being terminated from a job because of problems getting along with others. (Tr. 39, 194).

[12] As previously discussed, the ALJ limited Plaintiff's mental RFC as follows: "The claimant can understand, remember, and carry out simple, routine, repetitive tasks;" "can understand to

Court finds that the ALJ's RFC fully accommodates Plaintiff's physical impairments related to his back pain.[13]   (Id. at 26). Accordingly, Plaintiff's claim must fail.

**V.    Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** this **24th** day of **March, 2016.**

                         /s/ SONJA F. BIVINS
                    **UNITED STATES MAGISTRATE JUDGE**

---

carry out detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations;" "cannot tolerate contact with the public;" "needs to work independently but can work in close proximity to coworkers and supervisors;" "can maintain concentration and attention for up to 2 hours at a time;" "can occasionally adapt to changes in the work setting;" "can tolerate supervision, criticism, or instructions when given in a positive, nonthreatening manner;" and "can perform goal oriented work but not production pace work." (Tr. 26).

[13] The ALJ limited Plaintiff's physical RFC as follows: Plaintiff "can sit for 6 hours in an 8-hour workday and stand or walk for 6 hours in an 8-hour workday. The claimant can lift and carry 10 pounds frequently, 20 pounds occasionally. The claimant can occasionally stoop, kneel, crouch, crawl, balance, and climb ramps and stairs. The claimant can occasionally push and pull leg controls. The claimant cannot climb ropes, ladders, or scaffolds. The claimant cannot operate automotive equipment or work around dangerous machinery." (Tr. 26).